ROBERT N. HINTON, JR. and NANCY L. HINTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hinton v. Commissioner
Docket No. 11979-79.
United States Tax Court
T.C. Memo 1982-221; 1982 Tax Ct. Memo LEXIS 527; 43 T.C.M. (CCH) 1185; T.C.M. (RIA) 82221; April 26, 1982. Robert N. Hinton, Jr., pro se. John F. Eiman and James N. Mullen, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency of $ 3,975 in petitioners' Federal income tax for 1976. The sole issue for decision is the fair market value of stock acquired by petitioner Robert N. Hinton, Jr., pursuant to his exercise of a qualified stock option. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Robert N. Hinton, Jr. (hereinafter petitioner) and Nancy L. Hinton resided in Houston, Texas, when they filed their petition in this case. They filed their 1976 joint income tax return with the Internal Revenue Service Center, Houston, Texas. Petitioner, an attorney, has been licensed to practice law in the State of Texas since 1967. In 1973, he commenced employment with the Mitchell Energy Development Corporation (hereinafter MED), Houston, Texas. *529 On August 20, 1973, MED, pursuant to its employees' stock option plan which met the requirements of section 422, [1] granted petitioner an option to purchase up to 3,000 shares of its $ 0.10 par value common stock. On October 19, 1976, petitioner exercised the option to purchase 2,598 of these shares, at the option price of $ 32,840.54. On that date, 2,598 shares of MED common stock traded on the American Stock Exchange for a total price of $ 68,311.03. During 1976, petitioner was associate general corporation counsel and vice president for MED. As an officer of MED, petitioner would have been subject to the provisions in section 16(b), Securities Exchange Act of 1934, 15 U.S.C. sec. 78(p)(b) (hereinafter section 16(b)), had he sold the stock within six months before or after the date on which he acquired it through the exercise of his stock option. [2] The petitioner made no disposition of the MED stock within the meaning of section 425(c) during 1976. More than six months after petitioner's exercise of the option on October 19, 1976, petitioner *530 sold the MED stock. On his income tax return for 1976, petitioner completed and filed Form 4625, "Computation of Minimum Tax." This form shows tax preference items totaling $ 36,502, which consist of the aforementioned stock option in the amount of $ 35,470 and capital gains of $ 1,032. Although petitioner calculated a minimum tax of *531 $ 3,975 on the Form 4625, his tax return (Form 1040) contained the statement that petitioner was omitting payment of the $ 3,975 minimum tax "for the reasons set forth * * * in Schedule 3," a two-page statement of petitioner's position. The Schedule 3, which was in fact attached to petitioner's tax return, provides, in pertinent part, the following: The taxpayer is, and was on the date of exercise of the option, and was for the balance of calendar year 1976, an officer of a public company (the same company in whose stock the option existed). He was therefore classified as an "insider" and was precluded from receiving the proceeds of any sale of the stock in calendar year 1976, pursuant to S.E.C. rules which require that all gain on the sale of such option stock within 6 months after exercise of the option, belongs to the company, not the taxpayer. Thus, in economic substance, the corporation (Mitchell Energy & Development Corp.) was the owner of the spread, not the taxpayer. * * * while the quoted market value of the stock in the instant case on October 19, 1976, may have been, in the hands of a non-officer of that company who was free to sell the stock, worth in excess of *532 its cost, nevertheless, to the officer-taxpayer, who did not in economic substance own such excess for six months (and beyond the end of the taxable year), the value of the stock did not exceed its cost (the option price) either on the date of exercise, or at anytime during the taxable year. Therefore, the amount of tax would be zero. In the notice of deficiency, respondent determined that the difference between the $ 68,311.03 price at which 2,598 shares of MED common stock traded on the American Stock Exchange at the time of exercise of the option and the $ 32,840.54 option price to be an item of tax preference subject to the minimum tax. OPINION We must determine the fair market value of the MED common stock acquired by petitioner pursuant to his exercise of a qualified stock option. Section 56(a) as applicable to the year 1976 imposed a tax of 15 percent of the amount by which the sum of the items of tax preference exceeds the greater of $ 10,000 or the "regular tax deduction for the taxable year (as determined under subsection (c))." [3]Section 57 sets forth the items of tax *533 preference to which the minimum tax applies. Where stock is transferred pursuant to the exercise of a qualified or restricted stock option, section 57(a)(6) provides that the amount by which the fair market value of the share at the time of exercise exceeds the option price is an item of tax preference. Petitioner argues [4] that the fair market value of the stock he received upon the exercise of his option does not exceed the option price and, therefore, the exercise of that option did not create an item of tax preference. Petitioner's argument is that had he sold the stock on the day he exercised the option or within six months thereafter, his profit would have inured to the benefit of the corporation under section 16(b), and for this reason the option price of the stock constitutes its fair market value. *534 Respondent contends that under section 57(a)(6) the amount of the tax preference item is the fair market value of the MED common stock on the American Stock Exchange on the day the option was exercised less the amount paid for the stock (i.e., the option price). For reasons set forth below, we agree with respondent. Section 1.57-1(f)(3), Income Tax Regs., applies the principles of section 83 to compute fair market value for purposes of the minimum tax. In Kolom v. Commissioner,71 T.C. 235, 241 (1978), affd. 644 F. 2d 1282 (9th Cir. 1981), we upheld the validity of this regulation. See also Phillippe v. Commissioner,T.C. Memo. 1982-30. Section 83(a) generally provides that when property is transferred to a taxpayer in connection with the performance of services, the fair market value of the property over the amount paid therefor, is includable in the taxpayer's gross income. In determining the fair market value of the property, restrictions, other than those which by their terms will never lapse, are not to *535 be taken into account for purposes of section 83(a). Sec. 83(a)(1). Section 1.83-3(h), Income tax Regs., provides that a "nonlapse restriction" is a permanent limitation on the transferability of property which applies to the transferee or any subsequent holder. This regulation further provides, in pertinent part, the following: Limitations imposed by registration requirements of State or Federal security laws or similar laws imposed with respect to sales to other dispositions of stock or securities are not nonlapse restrictions * * *. Even assuming that section 16(b) is a "restriction" as that term is used in section 83(a)(1) and section 1.83-3(h), Income Tax Regs., it clearly is not a "nonlapse restriction" because the requirement of payment to the corporation of profits upon sale of the stock expires six months after exercise of the stock option. See Kolom v. Commissioner,supra.
Where stock is traded on a national exchange, the fair market value of the stock is generally the price at which the stock is *536 sold on the market. United States v. Cartwright,411 U.S. 546 (1973). Kolom v. Commissioner,supra at 243. Although the mean price at which the stock is sold on the exchange on the date of the transaction is generally used to determine fair market value, Kolom v. Commissioner,supra, the parties have stipulated that for purposes of the instant case, the fair market value of 2,598 shares of "unrestricted" MED common stock traded on the American Stock Exchange on October 19, 1976, shall be the $ 68,311.03 price at which it traded on such date. Since petitioner's section 16(b) liability does not reduce the fair market value of the stock that he received pursuant to the exercise of his stock option, we find the $ 68,311.03 stipulated fair market value of 2,598 shares of "unrestricted" MED common stock on October 19, 1976, to be the fair market value of that stock on such date for purposes of the minimum tax. Accordingly, respondent's determination must be upheld. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Under the terms of sec. 16(b), Securities Exchange Act of 1934, the profits realized by an officer or director of a corporation from the sale of an equity security of that corporation within six months after its acquisition inure to the benefit of, and are recoverable by, the corporation. Generally, the measurement of the sec. 16(b) liability is the difference between the price at which the shares were acquired and the sales price. Under reg. 16(b)-6, Securities and Exchange Commission, 17 C.F.R. sec. 240.16b-1 (1981)↩, however, when a stock option is exercised more than six months after it was granted, the sec. 16(b) liability is subject to a maximum limit, measured by the difference between the sales price and the lowest quoted market price within six months before and after the date of exercise of the option.
3. Both respondent's determination of petitioner's minimum tax for 1976, as well as petitioner's computation of that tax on the Form 4625, indicate that the regular tax deduction for the taxable year, as defined in 56(c), was less than $ 10,000.↩
4. Petitioner did not file a brief with the Court. His position, however, can be gleaned from his petition, as well as the statement (Schedule 3) which he attached to his 1976 return.↩